**Wayland Matthew FOX, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–08–00004–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 31, 2009.

Neal A. Davis, Houston, for appellant.

Jessica Akins McDonald, Houston, for state.

Panel consists of Chief Justice HEDGES and Justices ANDERSON and SEYMORE.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant, Wayland Matthew Fox, appeals his conviction for indecency with a child by contact for which he was sen-

tenced to ten years in prison. Appellant challenges the conviction on the grounds that the trial court: (1) erroneously excluded portions of the complaining witness's testimony read back to the jury in response to an article 36.28 request; (2) abused its discretion in admitting character conformity evidence; (3) erroneously allowed three State witnesses to comment on the complaining witness's credibility and the truthfulness of his testimony; and (4) erroneously instructed the jury. We reverse the trial court's judgment and remand the case for a new trial.

## I. BACKGROUND[1]

Appellant was charged with indecency with a child by contact based on allegations made by the complaining witness, who is appellant's former step-son from appellant's marriage with the complaining witness's mother, Lynda Torrey. The complaining witness alleged that appellant improperly touched him on two specific occasions when the complaining witness was in elementary school. The complaining witness did not make an outcry at or around the time in which the alleged incidents occurred. He first spoke about the incidents when he was 14 years old and in high school.

Specifically, the complaining witness told a motivational speaker at his high school that appellant had improperly touched him when he was younger. The motivational speaker gave a presentation at the complaining witness's high school and encouraged the students to disclose any past disheartening experiences they had suffered. The speaker handed out a number of gifts during the seminar, including books, shoes, and other clothing. After the presentation, the complaining witness

approached the speaker and told him that appellant had improperly touched him as a child. After the complaining witness's outcry, the motivational speaker gave the complaining witness clothes and two pairs of shoes. Thereafter, an investigation into the complaining witness's allegations ensued, and appellant was ultimately charged by indictment with indecency with a child by contact. Appellant denied the complaining witness's allegations and pleaded not guilty. A jury ultimately convicted appellant of the indecency with a child by contact and sentenced him to 10 years in prison.

In seven issues, appellant argues that the trial court: (1) improperly excluded portions of the complaining witness's testimony to be read back to the jury in response to an article 36.28 request; (2) abused its discretion in admitting character conformity evidence; (3) improperly allowed three State witnesses to comment on the complaining witness's credibility and the truthfulness of his testimony; and (4) erroneously instructed the jury.

## II. TESTIMONY READ BACK TO THE JURY UNDER ARTICLE 36.28

■ In appellant's first issue, he argues that the trial court erred by not allowing a portion of the complaining witness's testimony to be read back to the jury during deliberations. If jurors disagree about the testimony of any witness, the jury may apply to the trial court to have the disputed testimony read back to them. Tex. Code Crim. Proc. art. 36.28; *Arnold v. State*, 234 S.W.3d 664, 676 (Tex.App.-Houston [14th Dist.] 2007, no pet.). Upon such request, the trial court is first required to determine if the jury's inquiry is

---

1. Appellant does not challenge the sufficiency of the evidence supporting his conviction. Therefore, we discuss the facts briefly here and throughout the opinion as necessary to address his issues on appeal.

proper under article 36.28 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 36.28 ("if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them . . . that part of such witness testimony or the particular point in dispute . . . ."); *see also Brown v. State*, 870 S.W.2d 53, 55 (Tex.Crim.App.1994). If it is proper, the trial court must then interpret the communication, decide what sections of the testimony will best answer the inquiry, then limit the rereading accordingly. *Brown*, 870 S.W.2d at 55. We will not disturb the trial court's decision absent a clear abuse of discretion and a showing of harm. *Id.; Jones v. State*, 706 S.W.2d 664, 668 (Tex.Crim.App.1986).

### A. Statements in Dispute

In this case, the jury disagreed as to the complaining witness's statements detailing his recollection of what happened during the two incidents of abuse. The complaining witness testified that appellant improperly touched him on two distinct occasions. On direct examination, the complaining witness testified that the first incident occurred when he was in his bedroom playing with his toy Legos. The complaining witness testified that appellant entered the bedroom as he was playing and told him to take off his clothes. The complaining witness complied and removed his shirt and pulled his pants down. Appellant then placed the complaining witness on the bed and rubbed his penis on the complaining witness's back. With respect to the second incident, the complaining witness testified that he was in his bedroom playing with a toy Mr. Potatohead when appellant entered the room and repeated the sexual act appellant performed in first incident.

On cross-examination, the complaining witness restated the events that transpired during the two incidents of abuse and further stated that in addition to appellant's rubbing his penis on the complaining witness's back, appellant touched him in his "private area." While the complaining witness recalled these events, he indicated to defense counsel that he had possibly told Leticia Lechuga, a crisis intervention advocate, that the incidents occurred in appellant's bedroom. The complaining witness further testified that he told a counselor that appellant made him take off only his shirt, not both his shirt and pants as he stated during direct examination.

### B. Jury's Request For Testimony Under Article 36.28

On the first day of deliberations, the jury sent the following note to the trial court: "We are currently split on a decision and see we will have significant difficulties at this time in reaching a unanimous verdict. Please offer your comments or directions." The trial court instructed the jury to continue deliberating. About an hour and forty minutes later, the jury requested to read a portion of the complaining witness's trial testimony. The trial court told the jury to specify which portion of the testimony was in dispute, and in response, the jury completed a template form provided to them by the trial court, which read in pertinent part:

ATTORNEY EXAMINING THE WITNESS AT THE TIME OF SAID STATEMENT IN DISPUTE: <u>Wood</u>[2]

WITNESS: *[complaining witness]*

DIRECT EXAMINATION OR CROSS EXAMINATION: <u>Direct</u>

STATEMENT IN DISPUTE. *[complaining witness's] <u>description of the abuse, what he saw, and where he went to [sic]</u>*

2. Wood represented the State of Texas at trial.

With this request, the trial court chose to read a portion of the State's direct examination wherein the complaining witness described the two incidents of abuse when he was playing with his toys in his bedroom. Appellant unsuccessfully requested that the cross-examination on the same subject matter also be provided to the jury. Appellant complains that the trial court should have also included in the reading portions of the complaining witness's cross-examination testimony touching upon the same statements in dispute. Specifically, appellant first contends that on cross-examination, the complaining witness testified that he described to a crisis counselor incidents occurring in appellant's bedroom; this cross-examination statement contradicts the complaining witness's earlier direct examination testimony that the abuse occurred in his room, not appellant's bedroom. Next, appellant contends that the complaining witness testified on cross-examination that he told a counselor he took off only his shirt during the incidents, which again contradicts his testimony on direct examination that he removed *both* his shirt and pants. Additionally, appellant argues that the complaining witness provided new testimony on cross-examination that described the incidents of abuse, namely, that appellant touched the complaining witness in his "private part"; this particular statement was not made during the complaining witness's direct examination testimony. In response, the State contends that the additional cross-examination testimony exceeds the scope of the jury's request because the jury did not petition for statements made by the complaining witness to crisis counselors and other third parties.

## C. Scope of Jury's Request

■ The jury's request reflects that they wanted to know the complaining witness's recollection of what he saw, where he went, and his description of the abuse. A reading of the State's direct examination alone did not fully answer that question because several portions of the complaining witness's cross-examination testimony commented on where the complaining witness said he went and what he said he saw. Although the complaining witness testified on cross-examination that he told the CAC counselor that the abuse occurred in appellant's bedroom and took off only his shirt, these statements undoubtedly touched upon the complaining witness's recollection of what he saw and where he went during the incidents. Because the jury requested testimony in which the complaining witness described what happened, what he saw, and where he went, appellant's cross-examination proffer was responsive to the jury's request.[3] Therefore, we conclude

3. The fact that the jury requested the prosecutor's examination does not affect our disposition. *See Jones*, 706 S.W.2d 664. In *Jones*, the defendant was charged with aggravated assault. He denied the State's allegations, and at trial, he asserted a self-defense claim. One key piece of evidence in the case was the testimony of an eye-witness. On direct examination, the eye witness testified that the victim stepped back before he shot, but on cross-examination, he stated that the victim reached towards his back pocket. *Id.* at 665–66. These statements were significant in light of the defendant's self-defense claim. While deliberating, the jury asked to see the testimony of the eye witness. *Id.* at 666. The trial court instructed the jury to identify which attorney was conducting the examination or the subject in dispute. In response, the jury sent the following request: "We have a dispute as to whether or not [the eye witness] testified that [the victim] made a threatening gesture, that is to reach for his back pocket. Send us court records from the DA's questions." *Id.* Defense counsel in *Jones* requested that all of the testimony, both direct and cross-examination, be included in the reading. *Id.* The trial court refused and only the eye witness's direct examination was read to the jury. Although the jury requested only

that the trial court erred in refusing to allow these portions to be read to the jury. *See Jones*, 706 S.W.2d at 668 (holding that the trial court abused its discretion by failing to have cross-examination testimony related to the disputed issue read to the jury). We must next conduct a harm analysis. *See id.; Brown*, 870 S.W.2d at 55. Any error that does not affect the substantial right of appellant must be disregarded. *See* Tex.R.App. P. 44.2.

■ Two of our sister courts have held that error under article 36.28 is harmless where there is no variance between the direct testimony and cross-examination. *See Phelps v. State*, No. 01–89–00235–CR, 1990 WL 24898, * 3–4 (Tex.App.-Houston [1st Dist.] Mar. 8, 1990, no pet.) (not designated for publication); *Martin v. State*, 732 S.W.2d 743, 747 (Tex.App.-Fort Worth 1987), *vacated on other grounds*, 760 S.W.2d 662 (Tex.Crim.App.1988). Here, the cross-examination elicited statements that contradicted the complaining witness's prior statements on direct. The State primarily established its case through the complaining witness's testimony and his allegations against appellant. Because appellant denied the complaining witness's allegations, and there was no other evidence corroborating the complaining witness's allegations against appellant, credibility was vital to the jury's decision. Therefore, the conflicting statements were highly probative of appellant's guilt. Because the statements elicited by defense counsel on cross-examination varied from

the statements made on direct examination and the conflicting statements were highly probative of appellant's guilt, the trial court's error is harmful. *See Jones*, 706 S.W.2d at 668; *Phelps*, 1990 WL 24898, at *3–4; *Martin*, 732 S.W.2d at 747. We sustain appellant's first issue.

## III. CHARACTER CONFORMITY EVIDENCE

In issues three through six, appellant challenges the admission of character conformity evidence under rules of evidence 401–404. Appellant complains that the trial court erroneously admitted evidence that: (1) he experimented with cross-dressing; (2) his sons engaged in abnormally deviant and aggressive behavior when appellant was married to Torrey; (3) he was sexually abused as a child; and (4) he had a teenage homosexual experience.

■ Extraneous-acts evidence is admissible if it is relevant to a fact of consequence in the case, and the probative value of the evidence is not substantially outweighed by unfair prejudice. *Martin v. State*, 173 S.W.3d 463, 467 (Tex.Crim.App. 2005). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex.R. Evid. 401. Evidence of "other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Tex.R. Evid. 404(b). Character conformi-

---

the prosecutor's examination, the Court of Criminal Appeals held that the trial court abused its discretion in refusing to read defense counsel's cross-examination because there was a variance in the statements made during direct and cross and that such error deprived the defendant of a fair trial. *Id.* at 667–68.

Like *Jones*, the jury in this case had a dispute as to a witness's statements and request-

ed the prosecutor's examination of that particular witness. Additionally, statements made during direct examination varied from statements made during cross-examination. Following *Jones*, the jury's request for Wood's examination in this case does not shift defense counsel's cross-examination outside the scope of the jury's request for the complaining witness's testimony under article 36.28.

ty evidence is inadmissible that has no relevance beyond a tendency to show the defendant is a bad person or of a character from whom criminal conduct might be expected. *Casey v. State*, 215 S.W.3d 870, 879 (Tex.Crim.App.2007); *Bargas v. State*, 252 S.W.3d 876, 890 (Tex.App.-Houston [14th Dist.] 2008, no pet.). However, evidence of extraneous crimes, wrongs or acts is admissible under rule 404(b) if it tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable than it would be without the evidence. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim.App.1990) (op. on reh'g); *Webb v. State*, 36 S.W.3d 164, 180 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Rule 404(b) also provides that extraneous-acts evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Tex.R. Evid. 404(b). This list is illustrative rather than exhaustive. *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim.App.2004). Extraneous-acts evidence may also be admissible to rebut a defensive theory. *Moses v. State*, 105 S.W.3d 622, 626 (Tex.Crim.App.2003).

■ If a trial court determines that uncharged misconduct evidence is not barred under rule 404(b), it may still be inadmissible under rule 403. Relevant evidence is properly excluded under rule 403 when its probative value is substantially outweighed by the danger of unfair prejudice. Tex.R. Evid. 403. Courts should balance the following factors under a rule 403 analysis: (1) the strength of the evidence in making a fact more or less probable; (2) the potential of the extraneous offense evidence to impress the jury in some irrational but indelible way; (3) the amount of time the proponent needed to develop the evidence;

and (4) the strength of the proponent's need for this evidence to prove a fact of consequence. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex.Crim.App.1999); *Bargas*, 252 S.W.3d at 892–93.

■ Whether extraneous-acts evidence has relevance apart from character conformity is a question for the trial court. *Montgomery*, 810 S.W.2d at 391. The trial court must conclude that the evidence tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable than it would be without the evidence. *Id.* We review the trial court's ruling under an abuse of discretion standard and will not disturb the ruling if it is within the zone of reasonable disagreement. *Powell v. State*, 63 S.W.3d 435, 438 (Tex.Crim.App.2001).

### A. Cross–Dressing Evidence

■ In his third issue, appellant contends that the trial court erred in admitting evidence of his cross-dressing. At trial, Torrey testified that during her marriage with appellant, he admitted to being a cross-dresser and, on one particular occasion, appellant entered their bedroom dressed in ladies intimate apparel. The State, over appellant's objection, was also permitted to question three defense witnesses as to whether they knew that appellant experimented with cross-dressing. Appellant argues that (1) he did not receive proper notice under rule 404(b) of the State's intent to offer this particular extraneous-acts evidence; and (2) the evidence had no relevance or purpose except to show character conformity and to prejudice the jury by branding him a cross-dresser. In response, the State argues that evidence of cross-dressing is not considered a bad or wrong act under 404(b). We reject this argument. The plain language of rule 404(b) provides that evidence

of other crimes, wrongs, or **acts** is not admissible to show character conformity. *See* Tex.R. Evid. 404(b). The objectionable evidence need not be a bad or wrongful act or a crime punishable by statute. The act of cross-dressing constitutes "other acts" under rule 404(b). *See id.*

The State further maintains that the cross-dressing evidence was admissible because appellant "opened the door as to why the couple divorced." According to the State, the trial court properly admitted the cross-dressing evidence because it "provided a full and complete picture of the family dynamics" at the time of the offense. The State contends that the following line of questioning opened the door to the cross-dressing evidence:

> Defense Counsel: ... [P]eople have problems leading up to a divorce. Could the fact that there's friction in the marriage have affected [the complaining witness]?
>
> Torrey: I'm certain there was a lot of friction because of certain situations that were going on.
>
> Defense Counsel: That can have an affect on a kid, though, can't it?
>
> Torrey: Absolutely.
>
> Defense Counsel: But in any event, you guys ended up getting divorced. And the—in terms of that friction, that could also have an affect on [the complaining witness] to be upset or angry with [appellant]? Could that be an explanation for it?
>
> Torrey: That could be a possibility. I don't know.
>
> ...
>
> Torrey: The divorce was final in 2002, in February of 2002.

> ...
>
> Defense Counsel: ... It wouldn't make any sense for [the complaining witness] to see [appellant] after the divorce, would it?
>
> Torrey: No.
>
> Defense Counsel: Do you recall a time after the divorce when [the complaining witness] visited [appellant] and you learned another woman had moved in with [appellant]?
>
> ...
>
> Torrey: Yes.
>
> ...
>
> Defense Counsel: Well, after that, [the complaining witness] never went back over, right?
>
> Torrey: No, he did not.

We are not persuaded by the State's argument that this line of questioning opened the door to appellant's extraneous act of cross-dressing. The questions posed to Torrey neither sought to elicit information concerning the grounds for the couple's divorce nor created a false impression as to the reasons that the couple divorced. Appellant simply elicited information as to whether the divorce itself, coupled with the "friction" that accompanies a divorce, possibly upset the complaining witness. Appellant's questions regarding the divorce did not create a false impression warranting the admission of the cross-dressing evidence.

Moreover, we have examined the purposes for which a trial court may admit character conformity evidence under rule 404(b) including opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. *See* Tex.R. Evid. 404(b). These purposes were not material issues in the case. *Compare Samet v. State*, No. 12–07–00129–CR, 2008

WL 2600189, at *4–5 (Tex.App.-Tyler July 2, 2008, pet. ref'd) (mem. op., not designated for publication) (reasoning that appellant's habit of wearing a dress while committing extraneous sexual abuse offenses against children was the defendant's signature and a distinctive sign or mark that served to identify the defendant). The cross-dressing evidence had no relevance beyond demonstrating that appellant occasionally dressed in women's clothing. This extraneous evidence could not assist the jury in its determination of whether appellant sexually assaulted the complaining witness. *See Webb,* 36 S.W.3d at 180–181 (reasoning that an extraneous offense must be relevant to a "fact of consequence" in the case). The cross-dressing evidence had no relevance to any fact of consequence apart from its tendency to prove conduct in conformity with character. *See id.* Because the trial court and the State have failed to identify a reason for admitting the cross-dressing evidence and our independent review of the record reveals none, we find that the trial court abused its discretion by admitting this character conformity evidence.[4]

### B. Conduct of Appellant's Sons

██ Additionally, appellant argues in his fourth and fifth issues that the trial court erred in admitting third-party evidence of his sons' behavior during his marriage with Torrey. Torrey, over appellant's objection, testified that (1) appellant's sons drilled holes in the walls between the bedrooms during the couple's marriage to secretly watch Torrey in her bedroom; (2) appellant's son peeped in her bedroom window; (3) appellant's son took a private photograph of Torrey giving birth to the complaining witness; and (4) appellant's sons hit appellant. The State was further permitted to elicit similar evidence in its cross-examination of appellant. Appellant contends that admission of his sons' conduct was in violation of rules 401–404(b) because the State failed to give timely notice of its intent to introduce the evidence, and such evidence is irrelevant character conformity evidence. *See* Tex.R. Evid. 401–404(b). The State argues that appellant waived this issue for appellate review because he objected only to the cross-dressing evidence, not evidence of his sons' conduct during the marriage.

When a party attempts to adduce evidence of extraneous acts, the opponent of that evidence must specifically object to the evidence in a timely fashion to preserve error on appeal. *See* Tex.R.App. P. 33.1(a)(1)(A); *Montgomery,* 810 S.W.2d at 387. Here, the trial court considered the admissibility of the cross-dressing evidence and the third-party evidence regarding his sons outside the presence of the jury. The trial court determined that both pieces of extraneous-acts evidence were admissible.

4. Even if it could be validly argued that the cross-dressing evidence had relevance apart from character conformity, appellant also objected to the evidence on the basis of rule 403. Rule 403 provides: "Although relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or needless presentation of cumulative evidence." Tex.R. Evid. 403. Considering the relevant factors, we conclude that inherent prejudice of the cross-dressing evidence weigh in favor of exclusion. This extraneous-act evidence was not probative of a fact of consequence and there was little, if any, need for the prosecutor to use this evidence in presenting its case to the jury. The danger of unfair prejudice and the details of his cross-dressing were substantial. Because all factors flow in favor of finding that the probativeness of the cross-dressing evidence was substantially outweighed by the danger of unfair prejudice, we conclude that the trial court abused its discretion in admitting the evidence under rule 403 as well.

Appellant immediately lodged an objection, but only as to the cross-dressing evidence. He did not object to the extraneous-acts of his sons. Specifically, appellant urged, "On that point, on the cross-dressing point, I would object." Appellant's objection did not preserve error with respect to the extraneous acts of his sons. *See* Tex. R.App. P. 33.1(a)(1)(A). Shortly thereafter, the State introduced evidence of appellant's cross-dressing and the sons' acts in the presence of the jury. Appellant objected, asserting the "same objection, so the record is clear on that." Because the record does not reflect any objection at trial with respect to the aggressive nature of appellant's sons, we cannot review it on appeal.[5] *See* Tex.R.App. P. 33.1(a)(1)(A). We dismiss appellant's fourth and fifth issues.

### C. Appellant's Childhood Abuse and Teenage Homosexual Experience

In his sixth issue, appellant challenges the admission of two additional extraneous acts: (1) evidence of a childhood incident in which an adult male attempted to sexually abuse appellant and (2) evidence of appellant's teenage homosexual experience. The State, in response, argues that appellant was not harmed by the trial court's admission of this evidence. Accordingly, we proceed to the harm analysis and determine the harmful nature of the trial court's admitting this evidence and as well as evidence of appellant's cross-dressing.

### D. Harm Analysis on Inadmissible Character Conformity Evidence

■■■ Error in the admission of evidence of an extraneous offense constitutes a nonconstitutional error. *Boyd v. State,*

899 S.W.2d 371, 375–76 (Tex.App.-Houston [14th Dist.] 1995, no writ). We disregard nonconstitutional error that does not affect the substantial rights of the defendant. Tex.R.App. R. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Haley v. State,* 173 S.W.3d 510, 518 (Tex.Crim.App. 2005). If the error had no or only a slight influence on the verdict, the error is harmless. *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998). In determining whether error had a substantial and injurious effect or influence on the verdict, we must review the error in relation to the entire proceeding. *Haley,* 173 S.W.3d at 518. If the reviewing court is unsure whether the error affected the outcome, that court should treat the error as harmful. *Webb,* 36 S.W.3d at 183.

■■■ Looking at the entire proceeding, we conclude that the erroneously admitted evidence of appellant's cross-dressing, his teenage homosexual experience, and evidence of being sexually abused as a child had a substantial and injurious affect on the jury's verdict. Torrey's testimony of appellant's cross-dressing and evidence of appellant's teenage homosexual experience and being a child victim of sexual abuse undoubtedly had more than a slight effect upon the jury's decision. The jury heard Torrey's details of appellant dressing himself in a woman's negligee. Furthermore, the State commented on appellant's cross-dressing when examining three additional witnesses. In its closing arguments, the State again reminded the jury of appellant's cross-dressing and told jurors that they could consider appellant's cross-dressing "because that's something you

---

5. In the alternative, the State presents two additional arguments: the evidence was admissible to rebut appellant's testimony that appellant had a good relationship with his sons, and the evidence is admissible to rebut appellant's defensive theory that he lacked the intent to commit the offense. Having determined that appellant waived this point on appeal, we do not reach the merits of these additional arguments.

know about [appellant] and what he is and his background that brings him to today." Additionally, appellant's teenage homosexual experience and being victimized sexually as a child were inherently inflammatory. *See Bishop v. State,* 869 S.W.2d 342, 346 (Tex.Crim.App.1993) (linking appellant to extraneous sexual acts that are considered improper, immoral, and highly offensive by segments of the population can unduly prejudice jurors). One of the State's tactics was to generally portray appellant as a deviant personality. With this deviant-personality evidence, it was but a small leap for the jury to believe that he committed the crime with which he was charged. Likewise, previous homosexual activity would suggest to the jury the likelihood of guilt.

The record reflects that the extraneous acts involving appellant had a substantial and injurious affect on the jury's verdict. On the first day of deliberations, the jury indicated that there were "split on a decision" and believed that they would "have significant difficulties" in reaching a "unanimous verdict." Jurors also disputed the complaining witness's recollection of the abuse. In light of these facts, we have grave doubts that the trial court's error in allowing evidence of the extraneous acts involving appellant did not affect the outcome. Therefore, we must treat the error as having a substantial and injurious effect upon the jury's verdict. Accordingly, we find that the trial court's error is harmful and reversible. We sustain appellant's third and sixth issues.

Having found reversible error on issues one, three, and six, we need not address appellant's remaining issues. We reverse the trial court's judgment and remand this case for a new trial.